IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMARIO R. JACKSON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 21 C 5208 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Demario Jackson seeks to overturn the denial of his application for Supplemental Security Income (SSI). Jackson contends that he is disabled because he suffers from congestive heart failure, cervical degenerative disc disease, and vision problems.

An Administrative Law Judge (ALJ) found that only Jackson's congestive heart failure was a severe impairment. The ALJ went on to find that it significantly limited Jackson's functional capability in various ways but ultimately concluded that there were jobs that he could perform that existed in significant numbers. The ALJ thus determined that Jackson did not qualify as disabled as of January 24, 2019, the date he submitted his application for SSI. The Social Security Administration's Appeals Council denied Jackson's request for review of the ALJ's decision.

Jackson has filed suit to challenge the decision. He argues that the ALJ failed to properly evaluate his cervical disc disease, did not properly account for his limitations in determining his residual functional capacity (RFC), and improperly evaluated his

subjective statements regarding his impairments.

For the reasons explained below, the Court concludes that the ALJ erred in its RFC determination and therefore reverses the agency's decision and remands the case for further consideration.

**Background**

Jackson applied for SSI on January 24, 2019, claiming a disability onset date of January 1, 2019. The Court will summarize Jackson's condition and ALJ Robert Long's decision as relevant to this appeal. The following facts are undisputed except where otherwise noted.

After presenting to an emergency room with shortness of breath and chest pressure on January 15, 2019, Jackson was diagnosed with severe coronary artery disease, cardiomyopathy, and congestive heart failure. He had at least twelve follow-up appointments throughout 2019 and 2020, all of which were for treatment related to cardiac issues. Records from two of those appointments noted that Jackson had normal range of motion or normal motor function. None of those records mentioned any cervical disc or vision issues.

An August 2019 examination by consultative examiner Dr. Robert Cotler stated that Jackson reported having his first heart attack in December 2018 and that he was hospitalized for a second heart attack in April 2019. Dr. Cotler assessed Jackson with coronary artery disease, ischemic cardiomyopathy, left ventricular thrombus, congestive heart failure, hypertension, and diminished visual acuity.

Dr. Cotler also determined that Jackson suffered from cervical spine disease. He stated that Jackson had full painless range of motion in degrees of all nonaxial joints,

normal grip strength, and normal use of his hands and fingers. Dr. Cotler noted, however, that Jackson had moderate multilevel degenerative change of the cervical spine and a reduced range of motion in that area.

In September 2019, State agency medical consultant Dr. Calixto Aquino opined that Jackson could perform work at the light exertional level. Dr. Aquino did not personally examine Jackson.

In December 2020, Jackson testified at a hearing about his impairments. He stated that he experienced regular chest pain, fatigue, dizziness, and difficulty moving his neck. He also said that he could not stand or sit for long periods of time, walk more than a mile, or lift more than 30 pounds.

An April 2020 determination by a different State agency medical consultant, Dr. Richard Bilinsky, arrived at a different conclusion from Dr. Aquino. Dr. Bilinsky found that Jackson could only perform work at the sedentary exertional level. Dr. Bilinsky did not personally examine Jackson.

On February 21, 2021, the ALJ issued a decision denying Jackson's SSI claim. The ALJ found that Jackson was more limited than Dr. Aquino opined, but he agreed with Dr. Bilinsky that Jackson could work at the sedentary exertional level. He determined that Jackson's residual functional capacity included—but was not limited to—lifting and carrying up to ten pounds and standing or walking two hours in an eight-hour workday.

Jackson challenges three of the ALJ's findings as erroneous: (1) his cervical disc disease was not a severe impairment, (2) he had the residual functional capacity to work at the sedentary exertional level, and (3) he could perform jobs that exist in

significant numbers in the national economy.

When the Appeals Council denied Jackson's request for review on July 28, 2021, the ALJ's decision became the final decision of the Commissioner of Social Security. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Jackson then filed this lawsuit seeking judicial review of the Commissioner's final decision, in accordance with 42 U.S.C. § 405(g). Jackson asks the Court to remand the case to the agency to calculate and award benefits, or in the alternative, for further proceedings. The Commissioner of Social Security has moved for entry of judgment against Jackson.

## Discussion

After exhausting administrative remedies, an applicant for Social Security benefits may seek review of a denial in federal district court. 42 U.S.C. § 405(g). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

On review, the ALJ's findings of fact are conclusive if they are supported by substantial evidence. *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The substantial evidence standard, however, does not insulate the ALJ's findings and conclusions from review. "Although this standard is generous, it is not entirely uncritical." *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (internal quotation marks omitted). A court conducts "a critical review of the evidence," considering the evidence that supports and evidence that detracts from the SSA's decision. *Briscoe ex rel. Taylor v. Barnhart*, 425

F.3d 345, 351 (7th Cir. 2005) (internal quotation marks omitted). "'The decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.'" *Id.* (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id.*

The ALJ followed a five-step evaluation process to determine whether Jackson was disabled during the relevant period. *See* 20 C.F.R. § 404.1520(a). The second and fourth steps of this evaluation are the most relevant to this appeal. At the second step, the ALJ determines whether the claimant's impairment or combination of impairments limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c). The fourth step involves determining the claimant's RFC, that is, his ability to work on a sustained basis despite impairment limitations. *Id.* § 404.1520(e).

**A.    Severity**

Jackson argues that the ALJ erred in determining that his cervical degenerative disc disease was not severe at step two. Although he is correct that this step is "a *de minimis* screening for groundless claims," *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016), errors at this stage are harmless if the ALJ "properly considered all of [the claimant]'s severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC immediately after step 3." *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015); *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) ("But even if there were a mistake at Step 2, it does not matter. Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there

5

exists even *one* severe impairment.") (emphasis in original).

The ALJ in this case satisfied step two by categorizing Jackson's congestive heart failure as a severe impairment. Thus even if the ALJ erred in finding that cervical disc disease is not severe, it is a harmless error unless he also failed to incorporate all the impairments—both severe and non-severe—into his RFC determination. Jackson contends that the ALJ erred in this regard by failing to consider the impact of his cervical disc condition. Because the argument that an ALJ failed to consider the cumulative impact of all of the claimant's impairments "boil[s] down to a contention that the ALJ overstated [his] RFC by making this mistake," Jackson's appeal "comes down to whether the ALJ erred in assessing [his] RFC." *Arnett*, 676 F.3d at 591.

**B.     RFC determination**

Jackson argues next that the ALJ erred at step four of the evaluation process. Among other arguments, he contends that the ALJ's determination of his RFC does not adequately take into account his cervical degenerative disc disease.[1] The Seventh Circuit has "frequently reminded the agency that an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (collecting cases). If an ALJ believes that certain impairments are not severe, "that would only justify discounting their severity, not ignoring them altogether." *Id.* "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the

---

[1] Because an ALJ's failure to consider all impairments in his RFC determination warrants remand, *Curvin*, 778 F.3d at 649, the Court need not address Jackson's other arguments, including the constitutional argument that Jackson withdrew in his reply brief.

6

evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett*, 676 F.3d at 591.

In this case, the ALJ did not properly consider Jackson's cervical degenerative disc disease. The ALJ's opinion is almost eleven pages—over four pages of which discuss the RFC—but it references that condition only once in passing after concluding that it was not a severe impairment. Much of the RFC analysis consists of stating the results of Jackson's medical appointments between January 2019 and July 2020. When summarizing Dr. Cotler's examination, the ALJ mentions only that Jackson "demonstrated reduced cervical range of motion" but "full painless range of motion otherwise." Admin. Rec. 22. After evaluating Dr. Aquino's and Dr. Bilinsky's opinions, the ALJ concluded that he had "accommodated [Jackson]'s impairments and associated symptoms by limiting him to work at the sedentary exertional level." *Id.* at 23–24. The ALJ only stated, however, that Jackson's "congestive heart failure has been accommodated by the postural limitations" without mentioning the cervical disc impairment or indicating how the RFC accommodated it.

Although courts do not reweigh the evidence before the ALJ, remand is appropriate if "[n]othing in the ALJ's opinion explains how" the RFC is consistent with the limitations associated with an impairment and "the RFC makes no reference to any work limitations that would accommodate [the impairment]." *Arnett*, 676 F.3d at 592. Given the lack of any discussion of Jackson's cervical disc condition in the RFC determination, this case warrants remand because (at a minimum) the Court "has no idea what the ALJ thought about this evidence." *Id.*

The Commissioner argues that the RFC determination was supported by

7

substantial evidence because (1) records from Jackson's other appointments either stated that his range of motion was normal or failed to mention any limitations, and (2) the ALJ properly relied on the opinion of Dr. Bilinsky. Yet Jackson's cervical disc disease was diagnosed by Dr. Cotler, the agency's examining physician, and "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("The problem in this case is that the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor."). A "good explanation" was lacking here.

The ALJ found Dr. Bilinsky's opinion most persuasive—even though he never examined Jackson as Dr. Cotler did—because the ALJ believed that opinion was consistent with the record as a whole. Jackson correctly points out, however, that the record in this case consists almost exclusively of documents from appointments for his cardiac issues. The Seventh Circuit has rejected relying on medical records to contradict the opinion of a disinterested expert where the doctor who prepared the records "is not looking for [a specific condition] and may not even be competent to diagnose it." *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995).[2] The Court therefore cannot conclude that the lack of any mention of cervical disc issues in these cardiology records is a valid reason for preferring Dr. Bilinsky's analysis over Dr. Cotler's. But even

---

[2] Although *Wilder* involved the lack of a diagnosis of depression in medical records of purely physical ailments and all of Jackson's impairments are physical, nothing in the record or the ALJ's opinion suggests that the cardiologists who examined Jackson were looking for cervical spine issues or would be able to properly diagnose them.

8

if the medical records were enough, "that would only justify discounting" the severity of Jackson's cervical disc condition rather than "ignoring [it] altogether." *Terry*, 580 F.3d at 477.

In short, substantial evidence does not support the ALJ's determination of Jackson's residual functional capacity.

**C.   Award of benefits vs. remand for further proceedings**

Jackson asks the Court to remand the case with directions to award him benefits. The Court agrees with the agency that this is inappropriate. Remand with an instruction to award benefits is the appropriate resolution "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). That is not the case here; factual issues remain regarding how Jackson's cervical disc disease impacts his RFC. The Court therefore overrules Jackson's request for a remand with a direction to award him disability benefits.

## Conclusion

For the reasons stated above, the Court denies the Commissioner's motion for summary judgment [dkt. no. 15], grants Jackson's request to reverse and remand the agency's decision, and directs the Clerk to enter judgment vacating the decision of the Social Security Administration and remanding the case for further consideration consistent with the Court's decision.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  September 19, 2022